UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAURICE A. CHINNERY,

                Plaintiff,

     -against-

NEW YORK STATE OFFICE OF CHILDREN
AND FAMILY SERVICES and ROGER
RASCO, Family Director,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

10 Civ. 882 (DAB) (GAY)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 3-23-12

TO THE HONORABLE DEBORAH A. BATTS, United States District Judge:

Plaintiff, a former Youth Division Aid with the New York State Office of Children and Family Services ("OCFS"), claims that defendants OCFS and its Family Director, Roger Rasco,[1] discriminated against him because of his race and gender and retaliated against him for complaining of discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the New York State Human Rights Law ("HRL"), N.Y. Exec. Law §§ 290 to 297. Presently before this Court is defendant

---

[1] On October 20, 2010, the undersigned extended plaintiff's time to serve the summons and complaint upon defendant Roger Rasco until December 10, 2010. By letter dated December 9, 2010, plaintiff requested additional time to serve defendant Rasco; the undersigned extended the time to serve Mr. Rasco until January 14, 2011. Mr. Rasco was not served by January 14, 2011, and plaintiff did not request more time to do so. To date, Mr. Rasco has not been served. Thus, more than a year has passed and plaintiff has yet to comply. However, the Court's last order extending time for service did not explicitly notify plaintiff that his failure to effect service would result in a recommendation that the claims against Mr. Rasco be dismissed. Accordingly, the undersigned issued an Order to Show Cause (dated March 8, 2012) allowing plaintiff until April 13, 2012 to either serve Mr. Rasco or show cause why the undersigned should not recommend that the claims against Mr. Rasco be dismissed.

Copies mailed / ~~handed~~ / ~~faxed~~ to counsel 3/23/12

OCFS's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for lack of subject matter jurisdiction and failure to state a claim. For the reasons that follow, I respectfully recommend that defendant's motion should be granted in part.

## I. PROCEDURAL HISTORY

On or about December 22, 2009, plaintiff Maurice Chinnery filed the instant *pro se* complaint for employment discrimination. The complaint includes numerous documents attached as exhibits. On or about April 13, 2011, defendants filed a motion to dismiss; Your Honor referred the matter to the undersigned for a Report and Recommendation.

On or about June 3, 2011, the Court received plaintiff's opposition to defendants' motion to dismiss. Plaintiff's opposition consists primarily of various additional documents which, plaintiff alleges, support his assertions of discrimination and retaliation. On or about June 23, 2011, defendants submitted a reply in response to plaintiff's opposition.

Upon review of the parties' submissions, the undersigned construed plaintiff's opposition as a motion to amend the complaint to incorporate and attach the additional documents submitted in opposition to the motion to dismiss. Accordingly, by Memorandum Decision and Order dated August 19, 2011, the undersigned granted plaintiff's motion to amend and held that plaintiff's complaint is deemed to include the documents attached to his opposition to the motion to dismiss. In light of the foregoing, the undersigned allowed defendants until August 31, 2011 to submit additional argument in support of their motion to dismiss. By letter dated August 29, 2011,

defendants requested an extension of time (to October 3, 2011) to submit additional argument in support of their motion. The undersigned granted defendants' request; by letter dated October 3, 2011, defendants supplemented their reply.

## II. FACTUAL ALLEGATIONS

The following factual allegations are gleaned from plaintiff's Complaint, the documents attached thereto, plaintiff's opposition to the instant motion and from the documents attached thereto (and now deemed to be incorporated into the Complaint).

By letter dated March 26, 2007, Facility Director Roger Rasco informed plaintiff that defendant had instituted a disciplinary proceeding against him due to his "pattern of tardiness" in violation of defendant's time and attendance policy.

By letter dated September 18, 2007, Mr. Rasco informed plaintiff that defendant intended to suspend him for thirty days without pay for failure to make the required census call in over 130 instances between February 3, 2007 through June 26, 2007. The letter stated that, should plaintiff dispute said penalty, any grievance must be filed by October 3, 2007. By letter dated December 17, 2007, plaintiff was told that he must attend a meeting, scheduled for January 10, 2008, to discuss the September 18th notice of discipline. By letter dated December 26, 2007, Mr. Rasco advised plaintiff that defendant's records indicated that plaintiff had not appealed the September 18th notice of discipline and, therefore, plaintiff would be suspended without pay effective December 28, 2007 through January 26, 2008.

On or about December 31, 2007, plaintiff contacted defendant's Office of Equal Opportunity and Diversity Development ("EEOD"); the EEOD provided plaintiff with a complaint form. Plaintiff returned on the morning of January 3, 2008 to file a

discrimination charge but delayed submission of his complaint on the advice of a Labor Relations Department representative, who informed plaintiff that there was an ongoing investigation. Plaintiff returned home and retrieved a message on his answering machine from Mr. Rasco, who stated that plaintiff was cleared by the Labor Relations Department to return to work on January 3, 2008.

Plaintiff called Mr. Rasco at 9:15 a.m. on January 4, 2008. Mr. Rasco stated that he was "concerned about a signature rewriting that is being investigated and phone calls being missed." Plaintiff inquired as to when he was to return to work and what his schedule would be. He also requested that Mr. Rasco provide clearance in writing which specifically referred to the letter dated December 26, 2007 and which stated that plaintiff could return to work. Mr. Rasco responded that he would have to make a few phone calls and would call plaintiff back. At approximately 9:28 a.m., plaintiff received a call from Mr. Smith, who was calling on Mr. Rasco's behalf. Mr. Smith stated that plaintiff was to return to work that evening, January 4, 2008, on his usual schedule. Mr. Smith also stated that plaintiff would be paid for the days he did not work due to the suspension. Plaintiff asked whether Mr. Smith knew that plaintiff was scheduled to attend a meeting on January 10, 2008 to discuss the instant disciplinary action; Mr. Smith stated he had been notified of the upcoming meeting.

Later that evening, at approximately 10:08 p.m., plaintiff reported to work and was met at the gate by the Union President, Mr. Price. Mr. Connors, the Control Center staff member on duty, spoke to plaintiff through the loudspeaker and stated that he was

told by Mr. Rasco that plaintiff should not be allowed in the building without an AOD[2] or administrator. Mr. Connors offered to call Mr. Warfield, the AOD on duty; plaintiff responded that he would like to speak to Mr. Warfield. Minutes later, plaintiff observed Mr. Warfield talking to Mr. Connors in the control center. While plaintiff waited outside the gate, he explained the details of his situation to Mr. Price. Plaintiff waited for several more minutes but still did not receive clearance from Mr. Warfield. At that point, Mr. Price advised plaintiff to go home. Plaintiff called the facility at 11:27 p.m. and was told by Control Center staff member Mr. Johnson that Mr. Warfield had already left. Plaintiff asked to speak to Mr. Price; Mr. Price stated that he had informed Mr. Warfield of plaintiff's situation.

The next morning, January 5, 2008, plaintiff called the facility at 8:33 a.m. and asked to speak to the AOD on duty who, plaintiff learned, was Mr. Joyner. Plaintiff informed Mr. Joyner of the previous evening's events and asked whether the situation had been cleared up. Mr. Joyner stated that he had no knowledge that plaintiff's suspension had been rescinded and, as far as he knew, plaintiff was not cleared to return to work. Mr. Joyner stated he would look into the situation and call plaintiff back. At 8:37 a.m., Mr. Joyner left a message on plaintiff's answering machine confirming that plaintiff indeed had clearance to return to work from Mr. Rasco, Mr. Smith and the Labor Relations Department. Mr. Joyner called again at 8:42 a.m. and left another message stating that plaintiff would be paid for the previous night, because the lack of clearance was their error, and that plaintiff was to return to work that evening.

---

[2] Plaintiff does not elaborate on this abbreviation; the Court assumes it stands for "Administrator on Duty."

Plaintiff worked his regularly scheduled hours on January 6, 2008 and January 7, 2008, during which he made all required calls and then checked with the control center to verify that all the calls had been recorded. Control center staff told plaintiff that he had missed his 4:00 a.m and 4:30 a.m. calls; plaintiff informed the control center that he had made said calls.

When plaintiff arrived home after his shift on January 7, 2008, he called the facility and asked to speak to Mr. Rasco. Mr. Smith took the call instead, and stated that plaintiff left the facility too hastily on the evening of January 4, 2008 without speaking to the AOD on duty. Plaintiff again requested that his clearance for the thirty-day suspension be put in writing. Mr. Smith responded that he would get the clearance letter typed up and would put it in plaintiff's mailbox.

On or about January 8, 2008, plaintiff filed a formal complaint with the EEOD alleging race and gender discrimination on the grounds that other employees (not of plaintiff's gender or race) had committed the same infractions but were not likewise disciplined. Plaintiff's complaint recited the events following his thirty-day suspension up to the time of his complaint; plaintiff also noted that, as of January 8, 2008, he had not received the clearance letter.

By letter dated January 22, 2008, plaintiff was notified that his Time and Attendance hearing (related to the disciplinary action instituted March 26, 2007) had been adjourned from September 20, 2007 to February 13, 2008. The letter also cautioned that a failure to appear by either party will result in a disposition based solely on the existing records, which may result in an adverse ruling. By letter dated March 10, 2008, plaintiff was notified that the Time and Attendance hearing scheduled for

February 13, 2008 had been adjourned to April 8, 2008. The letter reiterated the caution for failure to appear. By letter dated April 22, 2008, plaintiff was notified that the Time and Attendance hearing was held on April 8, 2008. Attached to the letter was a copy of the decision, which stated, in part:

> A grievance hearing was scheduled on April 8, 2008 to review the Notice of Discipline issued to Mr. Chinnery on March 26, 2007, involving tardiness. This matter had been previously scheduled but adjourned three times before, not necessarily due to Mr. Chinnery absence [sic].
> However, Mr. Chinnery failed to appear at the April 8, 2008 hearing. His representative, Mr. Dillon, requested an adjournment to give Mr. Chinnery the opportunity to attend. After careful consideration, and in consideration of the objection to adjournment by Mr. Gianatasio, the Agency representative, the adjournment request was denied, and the hearing proceeded in Mr. Chinnery's absence.

The Permanent Umpire (the hearing officer) found that the dates of tardiness were not in dispute and, therefore, sustained the charges. The proposed penalty was reduced, however, to a Letter of Reprimand because the tardiness at issue had occurred nearly one and a half years prior. Defendant issued the Letter of Reprimand on May 8, 2008.

By letter also dated May 8, 2008,[3] plaintiff was notified that defendant intended to terminate his employment for failure to make the required census call in over 170 instances between July 18, 2007 through December 31, 2007.

On May 22, 2008, plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging that the discipline to which he was subjected (the thirty-day suspension and notice of termination of employment) constituted race and gender discrimination because other employees (not of plaintiff's gender or race) had

---

[3] The original date on the letter, April 29, 2008, was crossed out and changed to May 8, 2008. The change was initialed by plaintiff's supervisor. Plaintiff makes much of this fact; the Court, however, fails to ascertain its relevance to the issues at bar.

committed the same infractions (failing to make required phone calls) but were not likewise disciplined. Plaintiff specifically named four individuals (three male, one female) who, allegedly, were in the same situation but were treated more favorably; plaintiff also alleged that he had copies of a Missed Call printout from the facility showing all employees who missed calls. Plaintiff further alleged that defendants retaliated against him because he "griev[ed] write-ups and disciplinary actions which were administered unfairly." See NYSDHR Complaint Form attached to Complaint, page 12 of 22.

On June 2, 2008, defendant issued an Amended Notice of Discipline stating its intention to terminate plaintiff's employment for failure to make the required census call over 200 times from June 6, 2007 through December 31, 2007.

On March 26, 2009, the NYSDHR issued its Determination and Order After Investigation dismissing plaintiff's complaint upon its finding of no probable cause to support plaintiff's allegations of discrimination and retaliation. On September 24, 2009, the EEOC adopted the findings of the NYSDHR and issued a notice of right to sue. This action followed.

## III. RULE 12(b)(1) STANDARD OF REVIEW

In deciding a 12(b)(1) motion to dismiss to dismiss for lack of subject matter jurisdiction, this Court must assume the truth of the factual allegations in the complaint but should not draw inferences favorable to the party asserting jurisdiction. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Further, in considering a 12(b)(1) motion, courts "need not accept as true contested jurisdictional allegations. Rather, a court may resolve disputed jurisdictional facts by

referring to evidence outside the pleadings, such as affidavits." See Alston v. Microsoft Corp., No. 08 Civ. 3547, 2009 WL 1116360, at *3 (S.D.N.Y. Apr. 27, 2009) (quotation and citations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

A. Election of Remedies

Defendant OCFS argues that plaintiff's state discrimination claims are barred by the HRL's election-of-remedies provision. New York Executive Law § 297(9) states that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person has filed a complaint hereunder or with any local commission on human rights . . . ." N.Y. Exec. Law § 297(9). This provision bars a person who has filed a complaint with the New York State Division of Human Rights ("SDHR") from filing a lawsuit in this Court based on the same underlying conduct. See Alston, 2009 WL 1116360, at *4. Courts generally recognize two exceptions to this jurisdictional bar: (1) where the SDHR dismissed the complaint for administrative convenience; and (2) where the EEOC referred a complaint to the SDHR pursuant to Title VII requirements. See id. (citations omitted). See also N.Y. Exec. Law § 297(9) ("A complaint filed by the [EEOC] to comply with the requirements of [Title VII] shall not constitute the filing of a complaint . . . .").

Here, plaintiff filed a complaint with the SDHR on or about May 22, 2008. Plaintiff's SDHR complaint charged the OCFS and Roger Rasco with unlawful employment discrimination based on plaintiff's race and gender. On or about March 26, 2009, the SDHR dismissed plaintiff's complaint upon a determination of no probable cause. The instant complaint is similarly grounded in employment discrimination based upon race and gender, and alleges no conduct different from that alleged in the SDHR complaint. Because plaintiff's state discrimination claims at bar duplicate claims made in his SDHR complaint, and because neither exception applies, this Court lacks subject matter jurisdiction over the instant state discrimination claims. Accordingly, I conclude, and respectfully recommend, that OCFS's motion to dismiss plaintiff's state discrimination claims should be granted.

B. Eleventh Amendment

Defendant OCFS also argues that plaintiff's HRL claims are barred by sovereign immunity. "The Eleventh Amendment, through the doctrine of sovereign immunity, bars suits in federal court against a state absent a waiver of immunity or congressional legislation specifically overriding immunity." Robinson v. Fisher, No. 09 Civ. 8882, 2010 WL 5376204 at *6 (S.D.N.Y. Dec. 29, 2010). State sovereign immunity extends to state agencies that constitute "arms of the state." See Northern Ins. Co. of New York v. Chatham County, Ga., 547 U.S. 189, 193 (2006). Here, OCFS is properly characterized as an "arm of the state." See Rivera v. Mattingly, 604 F. Supp.2d 634, 638 (S.D.N.Y. 2009) (official capacity claims against OCFS Commissioner barred by Eleventh Amendment). Further, "the language of the NYSHRL does not waive sovereign immunity for the State of New York" or for OCFS. See Dimps v. New York State Office

10

of Mental Health, 777 F. Supp.2d 659, 662 (S.D.N.Y. 2011). Because New York State has not waived its Eleventh Amendment immunity, nor has Congress abrogated the state's immunity under the HRL, this Court lacks subject matter jurisdiction over plaintiff's HRL claims against OCFS. Accordingly, I conclude, and respectfully recommend, that OCFS's motion to dismiss plaintiff's HRL claims should be granted.

## IV. RULE 12(b)(6) STANDARD OF REVIEW

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). *Pro se* complaints and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quotation and citation omitted). A court should not dismiss a *pro se* complaint "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980).

For purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Id. at 153 (quotation and citation omitted).

In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is "not to weigh the evidence that might be presented at a trial but merely to determine

whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). The court must analyze the complaint under a two-pronged approach: (1) determine which statements are well-pleaded factual allegations and assume their veracity, and (2) "then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. Statements deemed "legal conclusions" rather than factual allegations are not entitled to the assumption of truth. Id. at 1950-51.

To withstand a motion to dismiss, a plaintiff alleging a Title VII discrimination claim need not plead facts sufficient to establish a *prima facie* case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). At the pleading stage, a plaintiff alleging Title VII discrimination need only provide sufficient facts to give defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." See id. at 512. "The *Swierkiewicz* holding applies with equal force to any claim that the *McDonnell Douglas* framework covers, including claims of retaliation, disparate treatment, and hostile work environment, and retains its vitality in the wake of *Twombly* and *Iqbal*." Langford v.

12

International Union of Operating Eng'rs, Local 30, 765 F. Supp.2d 486, 497 (S.D.N.Y. 2011) (alterations and internal quotation marks omitted) (citing Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). In sum, while plaintiff is not required to establish a *prima facie* case of discrimination or retaliation in order to survive the instant motion, his complaint "must give fair notice of [his] claims, and those claims must be facially plausible." See Morris v. David Lerner Assocs., 680 F. Supp.2d 430, 440 (E.D.N.Y. 2010).

### A. Title VII Race/Gender Discrimination

In order to succeed on his disparate treatment claim, plaintiff must eventually establish, *inter alia*, a *prima facie* case of discrimination by demonstrating: "(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." See Liebowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). Here, defendant contends that plaintiff's discrimination claim must be dismissed because it is wholly conclusory. Defendant specifically argues that plaintiff fails to allege any facts indicating that defendant took any action against him based on his race or gender.

Plaintiff alleges that he was disciplined for failing to make required phone calls while four other employees (not of plaintiff's race or gender) had committed the same infraction but were not likewise disciplined. Plaintiff also alleges that he has copies of a Missed Call printout from the facility showing all employees who missed calls. Thus, contrary to defendant's contention, plaintiff's allegations are sufficient to give defendant fair notice of his discrimination claim and the grounds upon which it rests. Further, in

13

the Court's view, plaintiff's discrimination claim is facially plausible.

Defendant also argues that some of the conduct of which plaintiff complains does not constitute an adverse employment action. Said argument "mistake[s] plaintiff's burden at this stage in the litigation" because "whether certain employment actions qualify as adverse for the purposes of Title VII, is a fact-specific inquiry . . . to be resolved at a later stage of litigation." See Flores v. New York City Human Res. Admin., No. 10 Civ. 2407, 2011 WL 3611340, at *8 (S.D.N.Y. Aug. 16, 2011) (internal quotation marks omitted) (quoting Kear v. Katonah Lewisboro Cent. Sch. Dist., No. 05 Civ. 7037, 2007 WL 431883, at *2 (S.D.N.Y. Feb. 7, 2007)). See also Swierkiewicz, 534 U.S. at 512 (The notice pleading standard expects "liberal discovery rules and summary judgment motions to define disputed facts and issues to dispose of unmeritorious claims."). Accordingly, I respectfully recommend that defendant's motion to dismiss plaintiff's Title VII discrimination claim should be denied.

B. Title VII Retaliation

In order to succeed on his retaliation claim, plaintiff must eventually establish, *inter alia*, a *prima facie* case by proving: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Here, defendant argues that plaintiff fails to allege a plausible retaliation claim because he does not describe the alleged protected activity and does not allege any evidence which would support an inference of causation.

Defendant's first contention–plaintiff's alleged failure to define any protected

14

activity–is without merit. "Protected activity" under Title VII ranges from the filing of a formal complaint with an anti-discrimination agency to informal protests of discriminatory employment practices.  See Trivedi v. New York State Unified Court System Office of Court Admin., Nos. 10 Civ. 7356, 10 Civ. 7390, 10 Civ. 7405, 10 Civ. 7406, 10 Civ. 7659, 2011 WL 4444506, at *18 (S.D.N.Y. Sept. 26, 2011).  Here, in the first instance, plaintiff complained to the NYSDHR that defendant retaliated against him because he "griev[ed] write-ups and disciplinary actions which were administered unfairly."  It is a reasonable inference to assume that plaintiff was complaining of retaliation spurred by his EEOD complaint.  Further, plaintiff alleges: (1) he was notified on May 8, 2008 that defendant intended to terminate his employment for failure to make the required census call in over 170 instances between July 18, 2007 through December 31, 2007; (2) plaintiff filed his NYSDHR complaint on May 22, 2008; and (3) on June 2, 2008, defendant issued an Amended Notice of Discipline stating its intention to terminate plaintiff's employment for failure to make the required census call over 200 times from June 6, 2007 through December 31, 2007.  Plaintiff also points out that the June 2d Amended Notice of Discipline included charges for which he had already been disciplined (June 6 - June 26, 2007), and which were not included in the May 8th notice. It seems patently clear–or at the very least it is reasonable to infer–that plaintiff is alleging that defendant "bumped up" the disciplinary charges in retaliation for plaintiff's NYSDHR complaint.  Thus, contrary to defendant's argument, plaintiff alleges retaliation in response to two protected activities: the filing of his EEOD complaint and the filing of his NYSDHR complaint.

Defendant's remaining contention–that plaintiff does not allege any evidence

which would support an inference of causation–is also without merit. Plaintiff alleges that, following his EEOD complaint, defendant stated its intention to terminate his employment and did so in retaliation for plaintiff having filed the EEOD complaint. Plaintiff also alleges that, following his NYSDHR complaint, defendant expanded the disciplinary charges underlying the termination of plaintiff's employment and did so in retaliation for plaintiff having filed the NYSDHR complaint. Drawing all reasonable inferences in plaintiff's favor, said allegations are sufficient to give defendant fair notice of his retaliation claim and the grounds upon which it rests.

Nonetheless, defendant specifically contends that the four month period between plaintiff's EEOD complaint and his termination precludes, as a matter of law, any inference of a causal connection. The Court notes, however, that "[t]his Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." See Gorman-Bakos v. Cornell Co-op Extension of Schnectady County, 252 F.3d 545, 554 (2d Cir. 2001). Mindful of the liberal pleading requirements that govern the resolution of the instant motion, this Court is unwilling–at this stage of the litigation–to conclude as a matter of law that plaintiff's allegations, liberally construed, fail to suggest a plausible scenario of a causal connection between his EEOD complaint and his termination. See Lindner v. International Bus. Machines Corp., No. 06 Civ. 4751, 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (rejecting defendant's argument on motion to dismiss retaliation claim that conduct was too distant in time from any protected activity and declining, at the pleading stage, to conclude that the six month and ten to eleven month periods at issue

were insufficient as a matter of law to establish the requisite causal connection). In sum, this Court concludes that plaintiff's retaliation claim is facially plausible. Accordingly, I respectfully recommend that defendant's motion to dismiss plaintiff's Title VII retaliation claim should be denied.

## V. CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend, that defendant's motion to dismiss should be (1) granted in part to the extent that plaintiff's state claims should be dismissed and (2) denied as to plaintiff's Title VII discrimination and retaliation claims.[4]

## VI. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Deborah A. Batts, United States District Court, Southern District of New York, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at 300 Quarropas Street, White Plains, New York 10601.

---

[4] Attached to this Report and Recommendation are copies of all unpublished opinions and decisions available only in electronic form cited herein. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Deborah A. Batts and not to the undersigned.


Dated:  March 23, 2012
        White Plains, New York

Respectfully Submitted:

_____
GEORGE A. YANTHIS, U.S.M.J.